## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Patrick Edward Burke

v.

Christine Ann Burke

November 8, 1991

Case No. C-90-763

By JUDGE WILLIAM H. LEDBETTER, JR.

Child support and attorney's fees are the contested issues in this divorce suit.

Mr. and Mrs. Burke were married in 1982. Two children were born of the marriage: Ryan, 7, and Melanie, 5. The parties separated in August, 1990, and shortly thereafter executed a separation agreement.

### Child Support

In the separation agreement, dated August 17, 1990, Mr. and Mrs. Burke agreed that Mrs. Burke would have custody of the children and that Mr. Burke would pay child support in the amount of $90.00 per week per child.

Mrs. Burke argues that the amount of child support established in their separation agreement is below the presumptive amount of child support owed by Mr. Burke calculated from the tables in Virginia Code § 20-108.2. She contends that the amount of child support should be increased to the statutory level, notwithstanding the parties' earlier agreement.

Section 20-108.2 provides that in any judicial proceeding to determine child support, there is a rebuttable presumption that the amount of the award shall be the

amount resulting from applying the guidelines, unless the court specifically finds that such amount would be unjust or inappropriate.

In *Milligan v. Milligan*, 12 Va. App. 982 (1991), the Court of Appeals held that the guidelines are to be applied to child support awards regardless of a previous agreement between the parties. The court further held that the "substantial change of circumstance" rule does not apply in such case because "the Code itself supplies the reasons to review" the parties' previous agreement and apply the guidelines. In *Watkinson v. Henley*, 8 V.L.R. 819 (1991), the Court of Appeals addressed the "flip side" of the *Milligan* situation. There, the court held that while the starting point for determining child support is to compute the presumptive amount using the tables in Section 20-108.2, the presumptive amount is rebuttable, and the trial court should give consideration to the provisions of a previous agreement between the parties. The court explained:

> We hold that where parents have agreed upon other provisions for the support and maintenance of a child, the trial court must consider the provisions of the agreement that relate to the factors in Code §§ 20-107.2 and 20-108.1 in deciding whether the presumptive amount would be unjust or inappropriate in a particular case. In so doing, the trial court *must* consider whether the agreed provisions for the child would better serve the interest or "equities" for the parents and children. Code § 20-107.2(2)(h) [now Section 20-108.1(B)(16)]. The best interest of the child or children is the paramount and guiding principle in setting child support, whether it be adopting the presumptive amount, calculating an alternative sum after the presumptive amount has been rebutted, ordering the amount agreed upon between the parties, or approving, ratifying, and incorporating in whole or in part the child support provisions of a contract . . . .
>
> Thus, while the trial court must proceed to ascertain the presumptive amount of support due under the statutory guidelines and must

make written findings as to why application of the guidelines would be unjust or inappropriate, it retains the authority to approve the provisions of an agreement between the parties, which may include monetary and nonmonetary benefits for the child . . . .

[T]he statute does not divest trial courts of the authority to adopt a voluntary agreement between parents where the provisions upon which they have agreed better serve the welfare of the child than would the amount provided by the support guidelines.

In addition to periodic support, the agreement contains the following provisions beneficial to the children:

The weekly support payments are to be deposited by Mr. Burke directly into a bank account designated by Mrs. Burke, thereby giving Mrs. Burke quicker access to the funds than normally would be the case.

In addition to the periodic payments of support, Mr. Burke is to pay one-half of all the costs of the children's "extracurricular activities," without limitation.

Mr. Burke is obligated to maintain health insurance coverage on the children.

Each parent is to maintain life insurance for the benefit of the children, with the other spouse to serve as "trustee" of such benefits, to fund the children's support and education, including college, vocational or professional education, etc.

The marital residence is to remain in the exclusive possession of Mrs. Burke for three years, after which it will be sold and the proceeds equally divided. The mortgage payments are to be made by Mrs. Burke during such period, but Mr. Burke is obligated to pay one-half of the cost of all repairs costing in excess of $25.00. This provision enables the children to remain in their home for a considerable period without fear that the non-custodial parent might demand that the asset be sold so that he can receive his share of the equity.

At the time the parties signed the agreement a little more than a year ago, the amount of child support that Mr. Burke agreed to pay *exceeded* the amount in the statutory guidelines. That situation changed when Mrs. Burke began

part-time employment and started incurring child care expenses. It is ironic that Mrs. Burke's employment, which should have the effect of increasing the income that benefits the children, has resulted in a higher child support obligation for Mr. Burke, even though his income has remained constant and all other circumstances seem to be unchanged.

Finally, the court is persuaded by Mr. Burke's argument that a portion of Mrs. Burke's child care expense are disproportionate to the number of hours that she works per week and the income that she earns.

The presumptive amount of Mr. Burke's child support obligation, calculated by use of the statutory guidelines, is $851.00. This finding is based on a reduction of Mrs. Burke's child care allowance to a more realistic figure than that advanced by her. For the reasons explained above, the court finds that this amount is inappropriate under the circumstances. Rather, Mr. Burke will be ordered to pay $400.00 per month per child, and all other provisions of the parties' separation agreement will be approved and incorporated in the decree. (The parties may negotiate and agree whether these payments will be made on a weekly or monthly basis, and the sketch degree will contain the appropriate language.)

### Attorney's Fees

Despite the parties' agreement that Mrs. Burke should have custody of the children, Mr. Burke sought custody *pendente lite* at the time he filed his bill for divorce. The bill was filed less than two months after he had signed the agreement. As a result of a *pendente lite* hearing held on November 29, 1990, custody was awarded to Mrs. Burke. On August 27, 1991, Mr. Burke again sought custody, and after a hearing, the court confirmed custody to Mrs. Burke. Mrs. Burke has submitted a copy of her attorney's statement, totalling $2,505.00, most of which she says is attributable to the "unnecessary" custody contests.

The provision (paragraph 14) for attorney's fees contained in the parties' separation agreement does not address this set of circumstances. Neither party has "breached" the agreement, and neither party has to "petition the court for the performance" of its terms. Therefore,

the court's well-recognized authority to assess attorney's fees in divorce suits is called into play. Considering that Mrs. Burke did not prosecute this suit but had to seek legal assistance in defending herself against a claim of adultery, that Mr. Burke instigated two separate unsuccessful custody contests *pendente lite* and that there is considerable income disparity between the parties, the court is of the opinion that it is appropriate that Mr. Burke pay the sum of $1,200.00 of Mrs. Burke's legal fees incurred in this litigation. The award will be paid within ninety days of the date of the decree.